## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Xia SHI,
A226 147 455,

        *Petitioner*,

     v.

Pamela BONDI, in her official capacity as U.S.
Attorney General;

Marcos CHARLES, in his official capacity as
Acting Executive Associate Director,
Enforcement and Removal Operations;

Todd M. LYONS, in his official capacity as
Acting Director, Immigration and Customs
Enforcement;

Kristi NOEM, in her official capacity as
Secretary of the U.S. Department of Homeland
Security

Luis SOTO, in his official capacity as Warden of
Delaney Hall Detention Facility;

        *Respondents*.

**Docket No:
PETITION
FOR WRIT OF
HABEAS
CORPUS AND
ORDER TO
SHOW CAUSE
WITHIN
THREE DAYS**

### PRELIMINARY STATEMENT

1.    Petitioner SHI, Xia brings this petition for writ of habeas corpus

under 28 U.S.C. § 2241 to challenge her unlawful detention at the Delaney Hall

Detention Facility. Ms. Shi, a Chinese national who fled persecution under the

1

family planning policy and domestic violence by her husband, has been detained without a bond hearing since August 21, 2025, based solely on the Board of Immigration Appeals' decision in *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025).

2.      The Immigration Judge's denial of Ms. Shi's request for a bond hearing, while faithful to *Matter of Yajure-Hurtado*, cannot survive scrutiny in federal court. Ms. Shi complied with every requirement of her supervision for the past year until she was detained by ICE. She now faces indefinite detention without any individualized assessment of whether she poses a flight risk or danger to the community. Both the Immigration and Nationality Act, properly construed, and the Fifth Amendment forbid this result.

3.      As federal district courts across the country have uniformly held when confronting this exact issue, the government's attempt to detain individuals like Ms. Shi under 8 U.S.C. § 1225(b)(2)(A) without bond hearings represents a fundamental misreading of the statutory scheme and violates constitutional due process. See, e.g., Hilario Rodriguez v. Moniz, No. 25-12358 (D. Mass. Sept. 18, 2025); Sampiao v. Hyde, No. 25-11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); Romero v. Hyde, No. 25-11631, 2025 WL 2403827 (D. Mass. Aug. 19, 2025).

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction under 28 U.S.C. §
2241(c)(3) because Ms. Shi is in custody in violation of the Constitution and
laws of the United States.

5.      Venue is proper in this district under 28 U.S.C. § 2241(d) because
Ms. Shi is detained at the Delaney Hall Detention Facility. which is located
within the District of New Jersey.

6.      This petition presents a live case or controversy under Article III
because Ms. Shi is currently detained without a bond hearing and seeks
immediate release or, alternatively, an individualized bond hearing.

**PARTIES**

7.      Petitioner Xia Shi (A226-147-455) is a 45-year-old native and
citizen of the People's Republic of China currently detained at the Delaney Hall
Detention Facility in Newark, NJ 07105.

8.      Respondent Luis SOTO is Warden of the Delaney Hall Detention
Facility. He is responsible for the maintaining and enforcement of the detention
of aliens and has immediate custody of Ms. Shi. He is sued in his official
capacity.

9.      Respondent Kristi Noem is the Secretary of the Department of
Homeland Security. She oversees ICE and its detention operations. She is sued in
her official capacity.

3

10.     Respondent Pamela Bondi is the Attorney General of the United States. She oversees the Executive Office for Immigration Review, which includes the Immigration Courts and Board of Immigration Appeals. She is sued in her official capacity.

11.     Respondent Todd M. Lyons is the Acting Director of Immigration and Customs Enforcement. He is responsible for ICE's enforcement and detention operations. He is sued in his official capacity.

12.     Respondent Marcos Charles is the Acting Executive Associate Director for Enforcement and Removal Operations. He oversees ICE detention facilities and operations. He is sued in his official capacity.

### STATEMENT OF FACTS

**A.  Ms. Shi's Persecution in China, Domestic Violence and Flight to the United States**

13.     After marrying her husband, Youliang Huang in 2007, Ms. Shi gave birth to a son in 2009 and later became pregnant with her daughter in 2013. Local officials in her hometown came enforcing the coercive policy. When officials discovered her second pregnancy, they repeatedly searched for her and demanded an abortion. After giving birth to her daughter, Ms. Shi was fined 20,000 RMB before her child could be registered and was ordered to undergo sterilization. She fled to Changsha, Hunan Province, to avoid the procedure, resulting in her husband's job loss.

14.    In June of 2015, while five and a half months pregnant with a third child, Ms. Shi was forcibly taken by seven officials to a hospital in Changsha, where she was subjected to a forced abortion under anesthesia.

15.    Two months later, she was again threatened with sterilization and coerced to pay another 20,000 RMB for an IUD insertion. Her subsequent health deteriorated due to chronic pelvic inflammation and pain, but officials refused to remove the IUD.

16.    After the forced IUD insertion, Ms. Shi's health deteriorated significantly. Her body rejected the device, causing chronic pelvic inflammation, abdominal and lower back pain, dizziness, and physical weakness. Despite her request, the local family planning office refused to remove the IUD.

17.    During this time, their relationship became increasingly unstable due to their financial difficulties. In July 2016, after coming home drunk, he physically assaulted her, striking her multiple times in front of their children. Ms. Shi sustained visible injuries, including swelling and bruising on her head and face. Feeling helpless and knowing that domestic violence is rarely protected or addressed by Chinese authorities, she fell into deep despair and attempted suicide by cutting her wrist. She was later taken to the hospital by her husband and still bears scars on her left wrist as a result.

18.    Ms. Shi continues to suffer from gynecological complications due to the IUD. Ms. Shi fled China on October 4, 2024. She traveled through Japan before arriving at the United States-Mexico border. On October 24, 2024, Ms.

Shi entered the United States without inspection near Tecate, California. She was
immediately apprehended by Border Patrol agents.

19.     In 2025, she sought medical care in New York and was prescribed
antibiotics for infection. She had planned to have her IUD removed once she
recovered; however, before she could do so, she was detained by the immigration
authorities and has remained in detention since then.

**B. Ms. Shi's Release on Supervision and Perfect Court Compliance**

17.     In October 2024, DHS released Ms. Shi from custody under INA §
236(a) on an Order of Supervision under INA § 241(a)(3), 8 U.S.C. § 1231(a)(3).
This release recognized that Ms. Shi posed neither a flight risk nor a danger to
the community.

18.     On October 26, 2024, Ms. Shi timely filed her I-589 application for
asylum, within the one-year deadline required by law.

19.     In the past year, Ms. Shi demonstrated perfect compliance with all
supervision and Court requirements. She attended the biometrics appointment
and ICE check-in via email. She properly notified authorities of her address. She
committed no crimes or violations of any kind.

**C. Ms. Shi's Detention Without Due Process**

21.     On August 21, 2025, Ms. Shi was arrested for allegedly
performing massage without a license. No charges were filed. She was detained
at Elizabeth Contract Detention Center and later was transferred to the Delaney
Hall Detention Center, Newark, New Jersey, where she remains detained.

22. On September 11, 2025, Ms. Shi appeared before Immigration Judge Tamar Wilson for a bond hearing. Despite Ms. Shi's perfect compliance record and lack of criminal history, the Immigration Judge denied the motion, stating she lacked jurisdiction under *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025).

23. The Immigration Judge found that because Ms. Shi entered without inspection, she is categorically classified as an "applicant for admission" under INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A), and therefore subject to mandatory detention without possibility of bond.

24. Ms. Shi has now been detained for over 90 days without any individualized assessment of whether she poses a flight risk or danger. Her detention has no end in sight.

### LEGAL FRAMEWORK

25. Congress created three distinct detention regimes for immigration cases, each serving different purposes and providing different procedural protections: a. INA § 235(b), 8 U.S.C. § 1225(b): Governs arriving aliens and recent border crossers, mandating detention without bond for those "applicants for admission" actively seeking entry at borders and ports of entry. b. INA § 236(a), 8 U.S.C. § 1226(a): Governs aliens arrested in the interior during removal proceedings, providing for discretionary detention with right to bond hearings unless subject to criminal mandatory detention under § 236(c). c. INA §

241, 8 U.S.C. § 1231: Governs post-final order detention pending removal, with time limits to prevent indefinite detention.

26.     This statutory structure reflects the fundamental distinction between exclusion proceedings (for those seeking admission) and deportation proceedings (for those already present). As the Supreme Court recognized in Jennings v. Rodriguez, 583 U.S. 281 (2018), § 1225 applies at "borders and ports of entry" while § 1226 governs those "inside the United States" and "present in the country."

27.     The different detention schemes reflect different governmental interests: immediate border control (§ 235), ensuring appearance at proceedings for those already present (§ 236), and effectuating removal after proceedings conclude (§ 241).

<u>ARGUMENT</u>

**COUNT I: MS. SHI IS DETAINED UNDER INA § 236(A), NOT § 235(B)—THE STATUTORY MISCLASSIFICATION VIOLATES THE IMMIGRATION AND NATIONALITY ACT**

28.     Ms. Shi's detention violates the plain language, structure, and consistent interpretation of the Immigration and Nationality Act. She is not an "applicant for admission" under § 235(b) but rather an individual present in the United States whose detention is governed by § 236(a).

**A.  Federal Courts Have Uniformly Rejected the Government's Position**

29.     Upon information and belief, based upon extensive research, to date, every federal court to consider this issue has rejected the government's attempt to classify interior arrestees as § 235(b) detainees. As Judge Murphy explained in *Romero v.* Hyde, the government's "new interpretation is contrary to the agency's own implementing regulations; its published guidance; the decisions of its immigration judges (until very recently); decades of practice; the Supreme Court's gloss on the statutory scheme; and the overall logic of our immigration system." 2025 WL 2403827, at *9.

30.     The District of Massachusetts alone has issued at least eight decisions rejecting the government's position:

- *Hilario Rodriguez v. Moniz*, No. 25-12358 (D. Mass. Sept. 18, 2025) (granting habeas; IJ must provide bond hearing);

- *Sampiao v. Hyde*, No. 25-11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025) (rejecting DHS position; § 236 applies);

- *Doe v. Moniz*, No. 25-12094, 2025 WL 2576819 (D. Mass. Sept. 5, 2025);

- *Encarnacion v. Moniz,* No. 25-12237 (D. Mass. Sept. 5, 2025);

- *Romero v. Hyde*, No. 25-11631, 2025 WL 2403827 (D. Mass. Aug. 19, 2025);

- *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025);

- *Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299 (D. Mass. July 7, 2025).

32.     Courts in other districts have reached the same conclusion. *See Choglio Chafla v. Scott*, No. 25-437, 2025 WL 2688541, at *7 (D. Me. Sept. 21, 2025) ("I find Yajure-Hurtado to be unavailing"); *Pizarro Reyes v. Raycraft*, No. 25-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 9, 2025) ("[E]very District Court... has disagreed with the BIA's view").

**B. The Plain Language of the Statute Requires § 236(a) to Apply**

33.     For § 235(b)(2) to apply, an "examining immigration officer" must determine that the individual is: (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). None of these conditions apply to Ms. Shi.

34.     Ms. Shi is not undergoing an "examination," which "is a specific legal process one undergoes while trying to enter the country." *Romero*, 2025 WL 2403827, at *9. She was detained by ICE following a transfer for an alleged crime, not at a border inspection.

35.     Ms. Shi is not "seeking admission," which is a present-tense action. She entered a year ago and has been living in the United States pursuant to release under INA § 236(a) and in compliance with the terms of the order of government supervision. As Judge Kobick explained, "the statutory text requires present-tense action," not past entry. Sampiao, 2025 WL 2607924, at *8.

36.     Congress knows how to write statutes covering all individuals who entered without inspection when it intends to do so. The Laken Riley Act, enacted in 2025, specifically requires mandatory detention for those inadmissible under § 212(a)(6)(A) who commit certain crimes. If all § 212(a)(6)(A) aliens were already mandatorily detained under § 235(b), this provision would be superfluous.

**C.  The Government Is Judicially Estopped from Its Current Position**

37.     During oral argument in *Jennings v. Rodriguez*, the government unequivocally represented that long-term residents are detained under § 236(a), not § 235(b). The following exchange occurred: Justice Sotomayor: "So what happens to... an alien who has resided within 100 miles of the border for 20 years? They would still be held under 1225?" Government Counsel: "No, Your Honor. They would be held under 1226(a)... if they hadn't committed other crimes." Transcript of Oral Argument at 49-50, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (No. 15-1204), *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2016/15-1204_k536.pdf (last access Oct. 31, 2025).

38.     This was not a peripheral comment—it was central to the Court's understanding of the statutory scheme. The *Jennings* opinion repeatedly relies on the distinction between § 235 (border processing) and § 236 (interior enforcement), a distinction that depends entirely on accepting the government's representation about which provision applies to long-term residents.

39. All three factors for judicial estoppel are met: (1) the positions are clearly inconsistent; (2) the government succeeded in persuading the Supreme Court, which relied on this distinction in its opinion; and (3) allowing the government to reverse position would create unfair advantage. New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).

40. The government cannot now claim Ms. Shi—who resided in the United States for a year—falls under § 235(b) when it assured the Supreme Court that even 20-year residents would be under § 236(a). This "heads I win, tails you lose" strategy undermines judicial integrity.

**D. *Matter of Akhmedov* Creates Fatal Ambiguity To ICE's Position**

41. The Attorney General's recent decision in *Matter of Gairat Akhmedov*, 29 I&N Dec. 166 (A.G. 2025), analyzed an EWI entrant's detention entirely under § 236(a) without mentioning § 235(b).

42. If the BIA's categorical rule that every person who entered without inspection is forever an "applicant for admission" were correct, the Attorney General would have addressed it. The failure to do so demonstrates that Yajure-Hurtado's reach is limited and creates ambiguity requiring constitutional avoidance.

**E. Constitutional Avoidance Requires Interpreting § 236(a) to Apply**

43. When faced with two plausible statutory interpretations, one raising serious constitutional questions and one avoiding them, courts must adopt the interpretation that preserves the statute's constitutionality. *Edward J.*

12

*DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

44.     As demonstrated in Count II below, interpreting the statute to mandate indefinite detention without hearings for individuals like Ms. Shi raises grave constitutional concerns. Interpreting § 236(a) to apply avoids these problems while remaining faithful to the statutory text and structure.

## COUNT II: PROLONGED MANDATORY DETENTION WITHOUT AN INDIVIDUALIZED HEARING VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

45.     Even if this Court were to find Ms. Shi properly classified under § 235(b)—which she is not—her prolonged detention without any individualized hearing violates substantive and procedural due process.

### A.  This Court Must Independently Assess Constitutional Violations

46.     While Immigration Judges are bound by BIA precedent, federal courts exercising habeas jurisdiction retain independent authority to assess constitutional violations. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("[T]he writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

47.     The Supreme Court explicitly remanded for consideration of constitutional challenges in Jennings, stating: "Whether detention pursuant to §

1226 is subject to [constitutional] constraints is a question that we need not and do not answer." 583 U.S. at 314. That question is now squarely before this Court.

**B.  The Constitutional Framework: Liberty Is the Rule, Detention the Exception**

48.     "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

49.     Civil detention is permitted only when it serves legitimate regulatory purposes and only for the period necessary to serve those purposes. When detention becomes prolonged without individualized justification, it transforms from regulatory to punitive. Id. at 690-91.

**C.  Ms. Shi's Detention Has Already Exceeded Constitutional Limits**

50.     Ms. Shi has been detained for over three months without any individualized assessment of flight risk or dangerousness. Her removal proceedings, which began over a year ago, continue with no final order. Her asylum application remains pending.

51.     This far exceeds the brief detention the Supreme Court approved in *Demore v. Kim*, 538 U.S. 510 (2003). *Demore* involved detention averaging 47 days during "brief" removal proceedings. The Court emphasized that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked" and "about five months in the minority of cases in which the alien chooses to appeal." *Id*. at 529-31.

52.    Justice Kennedy's controlling concurrence warned that if detention became unreasonably prolonged, due process would require individualized hearings. *Id*. at 532 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").

**D.    The *Mathews v. Eldridge* Factors Require a Hearing**

53.    Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), courts balance: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and probable value of additional safeguards; and (3) the government's interest, including administrative burdens.

54.    First, Ms. Shi's liberty interest could not be more substantial. Physical liberty—freedom from bodily restraint—"lies at the heart of the liberty that the Due Process Clause protects." Zadvydas, 533 U.S. at 690. Ms. Shi is not fighting over benefits or property; she is fighting for her freedom.

55.    Second, the risk of erroneous deprivation is enormous. The government's categorical approach assumes every person who entered without inspection requires detention regardless of individual circumstances. Ms. Shi's one-year perfect compliance record proves this assumption wrong. An individualized hearing would allow Ms. Shi to present evidence of her

compliance history, community ties, asylum claim's merit, and absence of any criminal history.

55.    Third, the government has no legitimate interest in denying hearings. Immigration Judges are already trained and equipped to conduct bond hearings. The government can still seek detention if it proves danger or flight risk. The only "burden" avoided is the requirement to justify detention which is hardly a legitimate governmental interest.

56.    The *Mathews* balance overwhelmingly favors requiring individualized hearings. The government's negligible administrative interest in avoiding hearings cannot justify categorical detention without any process whatsoever.

**E.  Ms. Shi's Status as an Asylum Seeker Heightens the Constitutional Violation**

59.    Ms. Shi is not merely seeking to remain in the United States—she suffered from forced abortion under the Chinese family planning policy and fled from her husband's domestic violence and seeks protection under our laws. She filed his asylum application timely. The United States has long recognized Chinese coercive family planning persecution and domestic violence as grounds for protection.

60.    Congress specifically recognized in INA § 208 that genuine refugees may be unable to enter through official channels, allowing asylum applications "whether or not at a designated port of arrival." 8 U.S.C. §

1158(a)(1). Yet under the government's interpretation, these very individuals Congress sought to protect face the harshest possible detention regime.

61.    Asylum seekers occupy a unique position in our legal framework. They are individuals who have sought the protection of the United States and invoked our nation's commitment to providing refuge from persecution. To subject such individuals to indefinite mandatory detention while their claims for protection are adjudicated not only violates due process but undermines the very humanitarian principles our asylum system exists to vindicate.

**F.  This Is an As-Applied Challenge Requiring Relief**

66.    Ms. Shi does not challenge the facial constitutionality of § 235(b)(2)(A) in all applications. She challenges only its application to someone in her circumstances: a person who entered over a year ago, maintained perfect compliance with supervision and has no criminal history when detained.

67.    The Supreme Court has long recognized that as-applied challenges require a narrower showing than facial attacks. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). Ms. Shi need not prove § 235(b)(2)(A) is unconstitutional in every application—only that applying it to detain her indefinitely without any hearing violates due process.

**G.  The Remedy: Immediate Release or a Bond Hearing**

68.    The appropriate remedy for this constitutional violation is Ms. Shi's immediate release. The government has already had almost a month to

17

justify her detention and has offered nothing beyond the categorical fact of her entry without inspection a year ago.

69.    At minimum, this Court must order an immediate bond hearing at which: (1) the government bears the burden of proving by clear and convincing evidence that Ms. Shi poses a flight risk or danger; (2) the Immigration Judge considers Ms. Shi's individual circumstances, including her compliance history, asylum claim, and community ties; and (3) the Immigration Judge considers alternatives to detention.

70.    Without such relief, Ms. Shi will remain detained indefinitely, certainly for months and possibly for years, based solely on her manner of entry a year ago, without any court ever assessing whether her detention serves any purpose. The Constitution forbids this result.

### COUNT III: THE DETENTION SCHEME VIOLATES EQUAL PROTECTION

71.    The government's detention scheme creates an irrational and unconstitutional distinction between two similarly situated groups of aliens: those who entered without inspection and those who overstayed visas. This arbitrary line-drawing violates the equal protection component of the Fifth Amendment's Due Process Clause.

72.    Under the government's interpretation of *Yajure-Hurtado* that every non-citizen who entered without inspection, regardless of circumstances,

compliance history, or time in the United States, faces mandatory detention without any possibility of bond. Meanwhile, aliens who entered legally but overstayed visas, even those with criminal histories or poor compliance records, remain eligible for individualized bond hearings under § 236(a).

73.    This classification fails even rational basis review. The government cannot articulate any legitimate reason why Ms. Shi, who suffered from forced abortion by the Chinese authorities has perfect compliance for over a year, and poses no risk, should be categorically detained while a visa overstay with violent felonies and a history of absconding could potentially obtain release. The manner of entry two years ago bears no rational relationship to current flight risk or danger to the community.

74.    At minimum, where fundamental liberty interests are at stake, classifications must be reasonable and serve legitimate government purposes. The EWI/visa overstay distinction for detention purposes fails this test. Both groups are removable, both may have ties to the community, both may pose varying degrees of flight risk or danger. Categorically detaining one group while allowing individualized assessments for the other based solely on manner of entry years earlier violates equal protection.

### COUNT IV: MS. SHI IS ENTITLED TO A STAY OF REMOVAL TO ANY THIRD COUNTRY

75.    Should the government attempt to remove Ms. Shi to any country other than China, she is entitled to advance notice and a meaningful opportunity

to seek withholding of removal and protection under the Convention Against Torture with respect to that country.

76.     Ms. Shi fled persecution in China. Her I-589 application and supporting evidence detail the specific persecution she suffered: Chinese authorities forcibly took her and performed an abortion when she was around five months pregnant. She was also fined multiple times for violating the national family-planning policy. This evidence addresses only persecution in China, not potential persecution in third countries.

77.     Due process requires that before the government can remove an alien to a particular country, that alien must have notice and a meaningful opportunity to challenge removal to that destination. *See Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 348 (2005).

78.     Ms. Shi has never been informed of any potential third country removal destination. She has had no opportunity to investigate conditions in such countries, gather evidence of potential persecution or torture there, or present such claims to an Immigration Judge. To remove her to an unspecified third country without such process would violate fundamental fairness.

79.     China's documented practice of transnational repression makes this issue particularly acute. The Chinese government has repeatedly pursued, threatened, and secured the return of dissidents from third countries. Ms. Shi could face persecution or refoulement from countries that maintain deportation agreements with China or that succumb to Chinese pressure.

80.    This Court should enter an order staying any removal to a third country until Ms. Shi receives: (1) at least 30 days' advance written notice identifying the specific proposed country of removal; (2) a reasonable opportunity to gather evidence regarding conditions in that country; and (3) a hearing before an Immigration Judge on any withholding or CAT claims specific to that country.

## COUNT V: MS. SHI IS ENTITLED TO A
## STAY OF OUT-OF-DISTRICT TRANSFER

81.    Respondents should be immediately enjoined from transferring Ms. Shi from Delaney Hall Detention Center to any facility outside this judicial district while this habeas petition remains pending.

82.    Federal courts have inherent authority to preserve jurisdiction over pending matters and ensure effective relief can be granted. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (recognizing importance of maintaining custody within court's jurisdiction for habeas proceedings).

83.    ICE has a documented pattern of transferring immigration detainees to frustrate habeas proceedings, moving petitioners across the country to remote facilities far from counsel and outside the jurisdiction of courts poised to grant relief. Such tactics cannot be permitted to defeat constitutional rights.

84.    Transfer would severely prejudice Ms. Shi's ability to pursue this petition. Her counsel, familiar with her case and the persecution she fled, is presumably located in this region. Transfer to a distant facility would disrupt

attorney-client communications, impede case preparation, and potentially force Ms. Shi to proceed pro se or start fresh with new counsel unfamiliar with her circumstances.

85.    Moreover, transfer could moot this Court's jurisdiction entirely. If ICE moves Ms. Shi outside this district, the government could argue this Court lacks jurisdiction over her immediate custodian, forcing Ms. Shi to refile in a new district and restart litigation while remaining detained. This game of jurisdictional musical chairs would effectively deny habeas relief through procedural manipulation.

86.    The balance of equities strongly favors a transfer stay. Ms. Shi faces irreparable harm from transfer—disruption of counsel, loss of jurisdiction, and continued unconstitutional detention while relitigating in a new forum. The government faces no prejudice from maintaining Ms. Shi at his current facility while this Court adjudicates her constitutional claims.

87.    This Court should immediately enjoin any transfer outside this judicial district and order Respondents to provide at least 72 hours' advance notice before any attempted transfer, allowing Ms. Shi opportunity to seek emergency relief.

### COUNT VI: PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

88.    Ms. Shi petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the federal habeas statute that embodies the Constitution's

guarantee that "[t]he privilege of the Writ of Habeas Corpus shall not be suspended." U.S. Const. art. I, § 9, cl. 2.

89.    This Court has jurisdiction because: (1) Ms. Shi is in custody under color of federal authority; (2) her custodian is within this Court's territorial jurisdiction; and (3) she asserts violations of the Constitution and laws of the United States. See 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

90.    No other remedy is available or adequate. The Immigration Judge has disclaimed jurisdiction to review Ms. Shi's detention under Matter of Yajure-Hurtado. Administrative appeal would be futile as the BIA already decided the jurisdictional question adversely in that precedent decision. Only this Court can vindicate Ms. Shi's constitutional rights.

91.    The Supreme Court has repeatedly confirmed that federal courts retain robust habeas jurisdiction over immigration detention, particularly where constitutional claims are raised. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001). This jurisdiction cannot be stripped by administrative decisions or statutory classifications. Where, as here, executive detention violates constitutional limits, federal courts must act.

### DEMAND FOR IMMEDIATE ORDER TO SHOW CAUSE

92.    Given the egregious nature of the constitutional violations presented—indefinite detention without any process based solely on manner of

entry two years ago—this Court should immediately issue an order to show cause pursuant to 28 U.S.C. § 2243.

93.    The statute mandates that courts "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Nothing in this petition suggests Ms. Shi is not entitled to relief; indeed, her circumstances present a compelling case for habeas corpus.

94.    Time is of the essence. Every day Ms. Shi remains wrongfully detained compounds the constitutional violation and irreparably harms her liberty interests. Her asylum case proceeds while she remains imprisoned, hampering her ability to gather evidence and prepare her defense against return to persecution.

95.    Pursuant to § 2243, this Court should order Respondents to show cause within three days why the writ should not be granted. Given the straightforward legal issues and clear factual record, any extension beyond the statutory minimum would be unjustified.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

A.    Issue a writ of habeas corpus and order Ms. Shi's immediate release from custody;

B.      In the alternative, order Respondents to provide Ms. Shi an
individualized bond hearing before an Immigration Judge within seven (7) days,
at which: a. The government bears the burden of proving by clear and convincing
evidence that Ms. Shi poses a danger to the community or flight risk; b. The
Immigration Judge must consider Ms. Shi's individual circumstances, including
her a-year perfect compliance record, lack of criminal history, asylum claim, and
community ties; c. The Immigration Judge must consider alternatives to
detention;

C.      Enter an order staying any removal to a third country until Ms. Shi
receives: a. At least 30 days' advance written notice of the proposed country; b.
Opportunity to gather evidence regarding that country; c. A hearing on
withholding and CAT claims specific to that country;

D.      Enjoin Respondents from transferring Ms. Shi outside this judicial
district while this petition remains pending, and require 72 hours' advance notice
of any attempted transfer;

E.      Issue an order to show cause pursuant to 28 U.S.C. § 2243
requiring Respondents to respond within three (3) days;

F.      Award costs and attorneys' fees;

G.      Grant such other relief as the Court deems just and proper.

Dated: November 26, 2025
        New York, New York

            Respectfully submitted,

            s/ Franklin S. Montero

            Franklin S. Montero Esq.
            Law Office of Franklin S. Montero
            451 Clifton Ave
            Clifton NJ 07011
            Montero@fmonterolaw.com
            (973) 777-8718


            s/ Theodore N. Cox

            Theodore N. Cox, Esq.
            *pro hac vice* counsel motion to be filed
            Law Office of Theodore N. Cox
            325 Broadway, Suite 201
            New York, New York 10007
            (212) 925-1208

## VERIFICATION

I, Theodore N. Cox, counsel for Petitioner Xia Shi, hereby verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in this petition are true and correct to the best of my knowledge, information, and belief, based upon the records available and information provided by Petitioner.

Dated: November 26, 2025
       New York, New York

Respectfully submitted,

  s/ Theodore N. Cox     

Theodore N. Cox, Esq.
*pro hac vice* counsel motion to be filed
Law Office of Theodore N. Cox
325 Broadway, Suite 201
New York, New York 10007
(212) 925-1208

27